BENJAMIN B. RORKE, Respondent, *v.* SALEM T. RUSSELL, President of the New York Mining Stock Board, Appellant.

(GENERAL TERM, FIRST DISTRICT, NOVEMBER, 1869.)

The acts of 1849 (page 389, chap. 258), and 1851 (page 838, chap. 455), in relation to suits against joint stock companies and associations, were intended to apply to suits having in view a remedy against the "joint property and effects" of such companies and associations.

When, therefore, an action merely seeks to restrain an unincorporated association by injunction, from carrying into effect its resolution of suspension against one of the members of the association, it is not within the meaning of said acts and is not well brought against the president of the association merely.  (INGRAHAM, J., dissenting.)

APPEAL from an order granted by Mr. Justice INGRAHAM, at Special Term, upon an order to show cause, and upon the pleadings and affidavits in the action, restraining the defendant, the "New York Mining Stock Board" and each and every of the officers and members of said board, until further order of the court, from enforcing a resolution adopted at one of its meetings, suspending the plaintiff from his privileges as a member of the said board for sixty days.

The complaint alleged, that the association was the owner of funds and securities, in the hands of its treasurer, and of furniture and fixtures, and that the action of the board, under the resolution in question, debarred the plaintiff from a voice in control of the said property, and impaired his rights in respect thereto, also, that the plaintiff owned a certain right or privilege in the association, known as "a seat" in the board, which he was, under its constitution, entitled to sell, and of which the value had been impaired, also, that his individual business was largely dependent upon the exercise of his rights, &c., as a member of the board.

It also appeared from the complaint, answer and affidavits, that the plaintiff was a member, and the defendant president, of the said "New York Mining Stock Board," an unincorporated association of more than seven members formed for the purpose of buying and selling stock and securities, to each other, and for principals for whom the members acted as brokers; that through trustees the association provided itself with a room for transaction of their said business, and, for the purpose of meeting expenses, the members paid an initiation fee upon entrance into the association, and afterward certain dues annually; that the members had covenanted and agreed together, to be bound by a constitution and by-laws, to which they had subscribed their names.

It also appeared from the pleadings and affidavits, that certain rules of conduct were laid down in the constitution for the preservation of order during the sessions of the board, and for the enforcement of said rules certain fines were prescribed, which were to be imposed by the president of the

association, there were also certain provisions for admonitions to the members and suspensions from their memberships for one week, by the president, on account of any violation of the said rules; and every member signing the constitution thereby pledged himself according to the provisions thereof, to abide by it, and also by all by-laws, resolutions or rules, which might be passed by the board.

It also appeared that the plaintiff had been suspended, by a resolution of the board, for sixty days, for certain gross and violent and threatening language used by him, toward the vice-president of the board, with reference to the latter's conduct and decisions as presiding officer during a session of the board, immediately after an adjournment of such session.

The complaint prayed an injunction as before stated.

*T. C. T. Buckley*, for the appellant.

*A. J. Vanderpoel*, for the respondent.

Present—CLERKE, SUTHERLAND and INGRAHAM, JJ.

By the Court—SUTHERLAND, J. In my opinion, even the complaint does not make a case for the injunction. The complaint does not allege, that " The New York Mining Stock Board " is a corporation, nor that it was organized or existed, or is recognized under or by any legislative act or authority.

From the allegations in the complaint, or from what can be inferred from it, of, or as to its organization, business, and purposes, it is extremely doubtful, whether it should be regarded as a joint stock company or association, within chapter 258 of the Laws of 1849, or within chapter 155 of the Laws of 1851, extending the act of 1849. (See *Austin* v. *Searing*, 16 N. Y., 117, 118, &c.) But however this may be, it certainly may be said, that neither of these acts, were passed for the purpose of authorizing the formation of the joint stock companies, &c., within them; but it is evident

that they were passed for the purpose of facilitating a certain class or kind of legal actions or remedies against them, that is, actions relating to, or by which a remedy is sought, as regards the "joint property and effects" of the company or association.

Now considering that the sole purpose of this action, as declared in the complaint, that the only relief (temporary or final) asked for, is, that the president of the board, its officers, and members, may be restrained from enforcing, the vote, resolution or action of the board, or of a quorum of its members, of the 18th December, suspending the plaintiff from his membership, or the rights and privileges of his membership for a certain number of days, I am inclined to think, that the action is not within either of the acts before referred to, that the plaintiff was not authorized by either of the acts, to bring this suit against the president alone, that it can not be regarded as a suit against the company, board, or association; and that no member of the board or association, other than the president, is, or can be regarded as a party to it; and if so, I think it follows, that the injunction could not regularly be issued against any one else. (*Fellows* v. *Fellows*, 4 John. Ch. R., 25; *Iveson* v. *Harris*, 7 Vesey, 256; *Dawson* v. *Princess*, 2 Anstr., 521; *Sage* v. *Quay*, Clarke's Ch., 347; 1 Barb. Ch. Pr., 632; *Watson* v. *Fuller*, 9 How. Pr. R., 425.)

And if the views expressed as to the purpose and effect of the acts of 1849 and 1851 are correct, it follows that the stock mining board must be regarded as a mere voluntary association, and that the plaintiff's membership of it is not, and cannot be, regarded as a franchise; and this being so, and there being nothing in the complaint to show that the proceedings of the board or of the quorum of the board complained of, were fraudulent or corrupt, or the result of a fraudulent conspiracy, I do not see how it can be said that the complaint makes a case for the equity jurisdiction of the court, even as against the president or as against the board, or as

Rorke *v.* Russell.

against the president and other members of the board, even conceding such other members to be parties to the action.

I must confess that I cannot see, on the facts stated in the complaint, upon what ground a court of equity could feel itself authorized or disposed to intermeddle with or trouble itself about the questions or subjects of conduct presented by the complaint in this action.

. Moreover, this action is not brought to prevent the board or a quorum of the members of the board from resolving or voting to suspend the plaintiff from membership or its rights and privileges.·

That act or proceeding, according to the complaint, had taken place before this action was commenced, and this action, as I have before said, is an action to prevent the enforcement of the act or proceeding of suspension, and yet though the plaintiff in his complaint in this action assumes and substantially alleges that the act or proceeding was unauthorized and absolutely void, it does not appear from the complaint that he has since the act or proceeding of suspension made any attempt to enter the room where the board does its business, or to exercise there or elsewhere any of the rights or privileges of a member.

The order granting the injunction should be reversed with costs.

CLERKE, P. J., concurred. INGRAHAM, J., dissented, and also gave an opinion as follows:

INGRAHAM, J. There is nothing in the constitution or by-laws which authorized a suspension of a member for sixty days. He may be fined and he may be suspended for a period not exceeding one week; the latter, however, can only be ordered by the president, after an admonition from the board.

· The board might adopt a by-law, authorizing the suspension for a longer period, and might make misconduct at other places than at the meetings of the board, cause for suspension or expulsion; but to warrant such action, they should adopt such by-laws before the commission of the offence.

As the by-laws now provide, no act outside of the board furnishes ground for suspension.

The 15th article of the constitution is referred to as requiring the members to abide by all by-laws, resolutions, or rules which may be passed by the board. This, however, can only be prospectively. It cannot be made to act upon matters which existed previously to the passage of the by-law or resolution.

The by-laws now make the right of membership a matter of property, and the member is not to be deprived of that right by an *ex post facto* resolution.

I think the order of suspension was unauthorized by the constitution or by-laws, and that the injunction should be granted.

Order reversed.