CLAUS H. ALBERS, Respondent, v. THE MERCHANTS' EXCHANGE OF ST. LOUIS *et al.* (THE BOARD OF DIRECTORS), Appellants.

**St. Louis Court of Appeals, March 4, 1890.**

1. **Corporations:** SUSPENSION FROM MEMBERSHIP. When a member of a corporation is suspended, after due notice and a fair trial, in pursuance of by-laws of the corporation, the fact that the charge, on which he was suspended, was preferred by one who was an employe and not a member of the corporation, will not invalidate the proceedings.

2. ———:———: REMEDY BY INJUNCTION. When a member of a corporation is improperly suspended for non-payment of a certain fine, he may, by reason of section 2772, of Revised Statutes, 1879, enjoin the enforcement of the order for suspension; and it is no defense to say that the order for suspension is a completed act, nor is it a defense that he has an adequate remedy at law by paying the fine under protest, and suing for the recovery of the amount paid.

3. ———: POWER OF DIRECTORS TO ENACT BY-LAWS. The board of directors of a corporation has no power to enact by-laws, unless authorized by the charter of the corporation so to do. But a power, delegated by the charter of an incorporated Merchants' Exchange to the board of directors, to control the exchange rooms, and

"establish and enforce such rules and regulations in regard to the use of the same, as may seem proper," empowers such board to enact a by-law declaring the exchange rooms open for business during certain hours, daily, and prohibiting smoking therein during such hours, notwithstanding that the board thereby extends the hours designated for such purposes by by-laws already adopted by the corporation.

4.    ——: BY-LAWS IMPOSING FINES. A by-law of a corporation empowering the board of directors to impose fines on members, but prescribing no limit in regard to the extent or amount of such fines, is invalid.

5.    ——: CONSTRUCTION OF DISCIPLINARY BY-LAWS. A by-law of a corporation, providing that a member of the corporation might be fined, censured, suspended or expelled for disorderly or improper conduct, as the board of directors should determine, does not authorize such board to suspend a member for the non-payment of a fine, imposed on him for the violation of the corporate rules, when such member in good faith contests the validity of the fine.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Hough, Overall & Judson,* for the appellants.

(1) Plaintiff had a perfect remedy at law by writ of *mandamus* to restore him to membership, and injunction does not lie. Bisbee on Produce Exchanges, p. 67; High on Injunctions, secs. 4, 1194; *Fisher v. Board of Trade,* 80 Ill. 85; *Baxter v. Board of Trade,* 83 Ill. 146; *Sturgess v. Board of Trade,* 86 Ill. 441; *Goddard v. Merchants' Exchange,* 9 Mo. App. 290. (2) The province of the writ of injunction is to prevent an anticipated or threatened action, and not to rescind that which is consummated. The injunction in this case does not restrain a threatened injury, but seeks to restore plaintiff to membership by undoing what has been already done. Under the rule in force in this state this is not the province of the writ of injunction. *Railroad v. Reynolds,* 89 Mo. 146; *McPike v. Pew,* 48 Mo. 525; *Towne v.*

*Bowers*, 81 Mo. 496; *Bailey v. Wade*, 24 Mo. App. 186; *Railroad v. Maddox*, 92 Mo. 469; *Humphreys v. Milling Co.*, 10 S. W. Rep. 147. That *mandamus* is the proper remedy for restoration from corporate disfranchisement, see *State v. Cham. of Com.*, 20 Wis. 63; High on Ex. Rem., sec. 291, *et seq.; State ex rel. v. Merchants' Exchange*, 2 Mo. App. 96. Injunction will not lie in this case, see *Gregg v. Medical Society*, 111 Mass. 185. Plaintiff's petition discloses that he has a perfect and adequate remedy at law by an action for damages even if the fine of fifty dollars was illegally imposed upon him; in that his payment thereof to prevent suspension would not be a voluntary payment, and that an action will lie for recovery of such payment. *Westlake v. City of St Louis*, 77 Mo. 47; *Humphreys v. Milling Co.*, *supra*. (3) Upon the merits, as correctly held by the court below, the board of directors had express authority under the proviso of rule 4, section 8, of the exchange, to adopt the regulation prohibiting smoking between one o'clock and 1:15 o'clock p. m., and the same was a reasonable and proper regulation, in violating which plaintiff was guilty of corporate misconduct, which subjected him to corporate discipline. *Ryan v. Carter*, 93 U. S. 78; *U. S. v. Church*, 36 Fed. Rep. 303; *Minis v. United States*, 15 Peters, 445. (4) The refusal of plaintiff to pay the fine, thus lawfully imposed upon him for corporate misconduct, was in itself corporate misconduct, for which he was rightfully, after due hearing, suspended pending such refusal to pay. *Erd v. Aid & Relief Ass'n*, 34 N. W. Rep. 555.

*Lodge & Talty* and *Jos. S. Laurie*, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is a proceeding by injunction to restrain the Merchants' Exchange, of St. Louis, and its directors, from interfering with the rights of plaintiff as a member of such exchange. A preliminary injunction was

granted, and this, on final hearing, was made perpetual, and the defendants prosecute this appeal.

The questions presented for decision have been raised entirely by the pleadings, and no question of fact is in dispute. The Merchants' Exchange, of St. Louis, is a corporation, and the plaintiff is a member of it. The plaintiff was fined in the sum of fifty dollars by the board of directors, upon a charge preferred by the floor manager of the exchange room,—the latter not being a member, but an employe of the corporation,—for smoking in the exchange room between the hours of one and 1:15 p. m., in violation of a regulation established by the board of directors. The plaintiff appeared before the board, in pursuance of a citation, and objected to the formality of the proceeding against him, on the ground that the charge had been preferred by a person not a member. This objection was overruled by the directors, and thereupon, at the request of the plaintiff, he was allowed four days in which to present his defense. At the time, to which the hearing was thus adjourned, he appeared and presented his defense in writing, in which he admitted that he had smoked on two different occasions in the exchange room between the hours of one and 1:15 p. m., in violation of the rule, and in which he set up as a defense that the directors had no authority to make the rule. This defense was overruled, and, as the plaintiff had no other defense, the directors sentenced him to pay a fine of fifty dollars within five days. This fine he refused to pay. Thereupon the board of directors cited him to appear, and show cause why he should not be suspended from membership for his failure to pay the fine. Thereupon he appeared before the directors, and presented a defense in writing, in which he submitted that the fine imposed upon him was illegal, and that it would be illegal to suspend him for refusing to pay it. On being asked if he had anything further to say in the

matter, he answered that he had not, and withdrew. Thereupon the board passed the following resolution: "C. H. Albers, having failed and refused to pay the fine of fifty dollars, lawfully imposed upon him by the board of directors on the twenty-fifth day of October, 1888, for improper and disorderly conduct on the floor of the Merchants' Exchange, after due notice and trial, as provided in section 9 of rule 4, and said C. H. Albers, having failed to show cause, after due notice and opportunity, why he should not be suspended from membership in the exchange during his failure and refusal to comply with said lawful order of the board of directors;—therefore, *resolved*, that said C. H. Albers is hereby suspended from membership on the Merchants' Exchange of St. Louis, pending his refusal to pay the fine of fifty dollars imposed upon him, under the provisions of section 9, rule 4, aforesaid." On two succeeding days Mr. Albers presented himself at the door of the room of the exchange, where its members meet to do business with each other, and was refused admission by the door-keeper. He, thereupon, began this action.

I. Before passing to the more important questions, we may advert to the incidental question, whether the plaintiff was properly suspended upon a charge preferred by a person not himself a member. Even if the plaintiff had not waived this matter by making his defense upon the merits, after he had raised this objection and the directors had overruled it, we should still regard it as a matter relating to the details of the procedure with which the judicial courts will not interfere. It is well settled that corporate bodies and voluntary societies, in the proceedings taken for the suspension or expulsion of members, are not bound to act with the strict regularity which obtains in judicial proceedings, but that the courts will limit themselves to inquiring whether they have acted within their powers, after giving notice to the accused and affording him an

opportunity of making his defense, and whether they have exercised their powers fairly and in good faith. All questions beyond this are questions of which the courts have no cognizance. *Lloyd v. Loaring*, 6 Ves. 773, 778; *Richardson-Gardner v. Freemantle*, 24 L. T. (N. S.) 81; *Hopkinson v. Marquis of Exeter*, L. R. 5 Eq. 63; *Dawkins v. Antrobus*, 17 Ch. Div. 615; *Manby v. Assurance Soc.*, 29 Beav. 445; *Dummer v. Corporation of Chippenham*, 14 Ves. 245, 252; *Blisset v. Daniel*, 10 Hare. 493; *Loubat v. LeRoy*, 15 Abb. N. C. 38; *White v. Brownell*, 2 Daly, 329; *Commonwealth v. Pike Beneficial Society*, 8 Watts. & S. 247; *Black and White Smiths' Society v. Vandyke*, 2 Whart. 309; *Society for the Visitation v. Commonwealth*, 52 Pa. St. 125; *Leech v. Harris*, 2 Brewst. 576; *State ex rel. v. Grand Lodge*, 8 Mo. App. 148.

II. A preliminary question is presented for decision, whether, assuming that the plaintiff was improperly suspended, he is entitled to a remedy by *injunction*. The position of the defendants is that, as the Merchants' Exchange of St. Louis is a corporation, he has a complete remedy at law, in the proceeding by *mandamus*, to compel the corporation to re-instate him in his rights as a member. We find, on examination, that nearly all the cases of expulsion from societies, in which the remedy by injunction has been successful, or where the jurisdiction of equity was conceded, were cases where the society was not incorporated. *Leech v. Harris*, 2 Brewst. 571, 576; *Rorke v. Russell*, 2 Lans. 244; *Powell v. Abbott*, 9 Week. Notes of Cas.(Pa.)231; *Bouldin v. Alexander*, 15 Wall. 131; *Bates v. Houston*, 66 Ga. 198. That *mandamus* is the regular remedy to restore a member of a corporation, who has been illegally disfranchised, has certainly been the settled law since the decision of the King's Bench in the case of Bagg, in the year 1616. *Bagg's case*, 11 Co. Rep. 93. In the supreme court of New York the distinction has been

taken that, while *mandamus* is the proper remedy, where the party aggrieved seeks restoration to a membership in a *corporation* (*People v. Benevolent Society*, 3 Hun. 361), yet this principle does not apply in the case of an *unincorporated association*, but that, in the latter case, if the party has any remedy, it is *by suit*, that is, by an action for an order of restoration. *Fritz v. Muck*, 62 How. Pr. 69. Decisions in Pennsylvania, Wisconsin and perhaps in other states, which accord the remedy in equity in the case of quarrels among the members of religious societies, corporate or unincorporated, rest on somewhat exceptional grounds, for there, as has been pointed out in Pennsylvania, a resort to equity may be necessary in order to prevent a multiplicity of actions. *Roshi's Appeal*, 69 Pa. St. 462, 467; *Kerr v. Trego*, 47 Pa. St. 295; *Lutheran Evangelical Church v. Gristgau*, 34 Wis. 328, 336. The jurisdiction of equity over charitable corporations rests on another ground.

But we apprehend that this question must rather be determined with reference to the provision of our statute relating to injunctions, than with reference to the grounds on which the courts of other jurisdictions have generally proceeded. That statute is as follows : "The remedy by writ of injunction or prohibition shall exist in all cases where an injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, whenever, in the opinion of the court, an adequate remedy cannot be afforded *by an action for damages.*" R. S. 1879, sec. 2722. The terms of this statute limit our inquiry in respect of the question under consideration to whether an adequate remedy could have been afforded to the plaintiff "by an action for damages." It is plain that such a remedy could not be afforded, unless the position taken by the learned counsel for the defendants, of which we shall speak in the next paragraph, is a sound one. It is shown by the

testimony of the plaintiff that he is a commission merchant, doing a business in volume varying between ten and twenty millions a year, and that the privilege of meeting other merchants on the floor of the exchange to trade with them is a very valuable privilege. It is obvious, upon the slightest reflection, that the rules of the law in regard to the measure of damages afford no standard by which the loss which might flow from even a temporary deprivation of this right could be estimated.

But counsel for the defendants seek to meet this objection by suggesting that the plaintiff might reduce his damages to a certain amount by paying under protest the fine of fifty dollars, which the directors have laid upon him, in which case he would be restored to his rights as a member, and might then bring an action at law to recover it back. If the plaintiff had paid the fine under protest, and to save himself from suspension as a member, he could have maintained an action at law to recover it back. *Westlake & Button v. City of St. Louis*, 77 Mo. 47. But it does not lie in the mouth of the defendants to say that he cannot have an injunction against the consequences which they have annexed to his refusal to pay it, because he might, by paying it, have acquired the chance to maintain an action against them to recover it back; since the defendants might have collected the fine, if validly imposed, by an action of debt.

But is argued that an injunction is not the proper remedy, because the act sought to be enjoined has *already been done*, that is, because the plaintiff has already been suspended, and that the office of an injunction is to prevent threatened injuries, and not to undo injuries which have already taken place. If this argument were allowed to prevail, it would show that a great mass of decisions in the English and American courts, where, in the case of unincorporated societies, and in some instances in the case of corporations, the

remedy by injunction has been conceded, to restore officers or members improperly removed, suspended or expelled, have proceeded on erroneous conceptions of the proper use of this remedy. Among such cases we may mention the following: *Fisher v. Keane*, 11 Chan. Div. 353; *Dawkins v. Antrobus*, 17 Ch. Div. 615; *Labouchere v. Earl of Wharncliffe*, 13 Ch. Div. 346; *Brunnenmeyer v. Buhre*, 32 Ill. 183; *Lutheran Evangelical Church v. Gristgau*, 34 Wis. 328; *Leech v. Harris*, 2 Brewst. 571; *Fritz v. Muck*, 62 How. Pr. 69; *Hutchinson v. Lawrence*, 67 How. Pr. 38; *Olery v. Brown*, 51 How. Pr. 92; *White v. Brownell*, 2 Daly, 321; *Loubat v. LeRoy*, 40 Hun. 546; *Hurst v. New York Produce Exchange*, 100 N. Y. 605; s. c. in full, 1 Cent. Rep. 260; *Rorke v. Russell*, 2 Lans. 244, *Powell v. Abbott*, 9 Week. Notes of Cases (Pa.) 231. Aside from this the argument that the injury is complete is met by the proposition, supported by judicial authority, that, if the act of suspension is void, the plaintiff has never, in contemplation of law, been suspended. *Wood v. Woad*, L. R. 9 Exch. 190. If he has not been lawfully suspended, he has precisely the same right to enter the exchange room as a member, or which he would have, if the illegal resolution of suspension had not been passed; and the object of this suit is to restrain the directors from interfering *in future* with his rights as a member. Decisions of the supreme court of Illinois have been cited to us, on behalf of the defendants, in support of their view that an injunction will not lie in this case, because the injury is passed and complete. *Fisher v. Board of Trade*, 80 Ill, 85; *Baxter v. Board of Trade*, 83 Ill. 146; *Sturgess v. Board of Trade*, 86 Ill. 441. We entertain great respect for the decisions of that court, but on this question its decisions seem to be contrary to reason, and out of line with the current of judicial authority.

In this case, the form of the decree, which the court rendered, enjoins the defendants from "in any manner

interfering with the exercise by plaintiff of his rights and privileges as a member of said Merchants' Exchange of St. Louis, by reason of his failure to pay said fine of fifty dollars,'' etc.   It is perceived that it is not in form a *mandatory injunction;* but, if it were in that form, if it commanded the defendants to restore the plaintiff to his membership in the corporation, we are not prepared to say, in view of the extent to which the courts have recently gone in upholding mandatory injunctions, that it would be erroneous.

III.   This brings us to the real merits of the controversy.   The charter of the Merchants' Exchange of St. Louis provides that, ''the rules, regulations and by-laws of the said association (by which we understand the association which existed prior to the act of incorporation) shall be the rules, regulations and by-laws of the corporation hereby created, until the same shall be regularly repealed or altered in the mode therein provided ;   *   *   *   and the board of directors of said association shall have power to suspend or expel any member of said exchange for *misconduct*, or for violation of any of the rules or regulations or by-laws, or for other causes specified in said rules.''   We must keep the language of this provision in view, because a part of the argument of the defendants is that the refusal to pay the fine which had been laid upon the plaintiff was '' misconduct '' within the meaning of this provision. From the voluminous rules, regulations and by-laws, which have been put in evidence, we extract the following, as the only ones which have a direct bearing upon the question before us :

''Rule 4, sec. 8.   The directors shall cause to be provided suitable reading and exchange rooms for meetings of members, which shall be kept open during the usual business hours; they shall have control over such rooms and may establish and enforce such rules and regulations in regard to the use of the same,

as may seem proper; provided, however, that from eleven a. m. to one o'clock p. m., daily, the same shall be set apart and applied for the general meeting for the transaction of business.

"Rule 4, sec. 9. It shall be the duty of the board of directors to examine charges preferred against any member of the exchange, when made to the board in writing by a member of the exchange, and to examine into misconduct of any member, in any way coming to their knowledge; and when any member shall be found guilty of any violation of any rule, regulation or by-law of the exchange * * * such offending member shall be censured, suspended or expelled by the board of directors, and for disorderly or improper conduct in any of the rooms of the exchange may be fined, censured, suspended or expelled as they may determine * * *."

"Rule 16. None of the rules and regulations, or by-laws of the exchange, shall be rescinded or altered, nor any new ones made, unless by a vote of two-thirds of the members voting at a special or regular election ordered by the board of directors, and after notice of the proposed change shall have been conspicuously posted in the exchange room for at least ten days; except that section 14 of rule 4 shall not be repealed or amended, except as therein provided."

"By-Laws, article 8. Smoking in the exchange room, between the hours of eleven a. m. and one p. m. is prohibited. Violations of this rule shall be reported by the floor committee to the secretary, and any member violating this rule shall be subject to discipline, as provided in section 9 of rule 4."

Prior to the doing of the act, for which the plaintiff was suspended, it became expedient, in the opinion of the board of directors, to change the hours of keeping the exchange open for business, so as to conform to the hours established by other similar bodies in other cities,

from which this exchange received telegraphic reports, showing the state of the markets. They, therefore, established a regulation by which the exchange room was to be kept open from nine a. m. to 1:15 p. m., and they also established a regulation prohibiting smoking in the exchange room between the hours of eleven a. m. and 1:15 p. m., thus assuming to extend the time within which smoking in the exchange room was prohibited by by-law, article 8, above set forth, which had been established by the corporation and not by the directors, to the extent of fifteen minutes.

*First.* The first question is, had the directors power to make a new regulation on the subject covered by by-law 8, extending the time of the prohibition contained in that by-law? The plaintiff has argued that the directors have no power to enact by-laws, unless power thereto is given by the charter. This is undoubtedly the rule (*Carroll v. Bank*, 8 Mo. App. 250, 253; *State Savings Ass'n v. Printing Co.*, 25 Mo. App. 642); but it has no application to this case, for, by the terms of the charter above set out, the regulations of the association were to continue in force until regularly repealed or altered in the mode therein provided, and one of these regulations (rule 4, section 8) provided, in express terms, that the directors "shall have *control over such rooms*, and may establish and enforce such rules and regulations in regard to the use of the same as may seem proper." The same regulation contained the proviso, "that from eleven o'clock a. m. *to one o'clock p. m.*, daily, the same shall be set apart and applied for the general meeting for the transaction of business." It was with reference to this last regulation that the corporation, in its constituent capacity, enacted by-law number 8, above quoted, prohibiting smoking upon the floor of the exchange between the hours of eleven a. m. and one p. m. In view of the fact that plenary power is given to the directors to

establish and enforce such rules and regulations in regard to the use of the exchange rooms, as they may see proper, we do not think that the argument is tenable that they had no power to make a new regulation, which should have the effect of extending the prohibition in regard to smoking on the exchange floor, which had previously been made by the corporation. It seems that, under section 8 of rule 4, the directors had ample authority to establish and enforce a regulation prohibiting smoking within the exchange hall, at any time, either within or without the hours of business. We, therefore, overrule the contention of the plaintiff on this point.

*Second.* But it does not at all follow from this that he has been lawfully suspended. It is perceived, on recurring to the provisions of section 9 of rule 4, in which the power to discipline the plaintiff for the act in question is sought, that it recites that "for disorderly or improper conduct *in any of the rooms* of the exchange (the offending member) may be fined, censured, suspended or expelled, as they (the directors) may determine." Here the regulation undertakes to grant an indefinite power to fine, without placing any limit upon the amount of the fine. It is an old and well-settled rule in regard to the power of corporations to impose fines or penalties, that the penalty must be a sum certain, and not left to the arbitrary assessment of the company, under the circumstances of the particular case. Ang. & A. Corp., sec. 360; *Wood v. Searle*, J. Bridg. 141; *Mobile v. Yuille*, 3 Ala. 137; *Piper v. Chappell*, 14 Mees. & W. 624, recognized in *Master-Stevedores' Association v. Walsh*, 2 Daly (N. Y.) 14; and in *Huntsville v. Phelps*, 27 Ala. 58. In an early and leading case on this subject the rule was laid down so strictly as to hold that a corporate by-law imposing a fine would be void for uncertainty, even though the utmost limit of the same be fixed; for this would allow

a party (that is, the corporation) to assess his own damages (*Wood v. Searle, supra*); and this decision was followed in *Mobile v. Yuille*, in its application to a municipal ordinance. But later and better authority in England and in this country is to the effect that, where the by-law or ordinance fixes a limit, *above which* the corporate judicatory cannot go in imposing the fine, it will not be void for uncertainty,—reasoning that the effect of such a by-law is to impose the fine named in the utmost limit, and to vest in the judicatory the power of mitigating it according to circumstances. *Piper v. Chappell, supra* (overruling to this extent *Wood v. Searle, supra*); *Huntsville v. Phelps, supra* (overruling to this extent *Mobile v. Yuille, supra*). But no court, so far as we are aware, has held that a municipal ordinance, or a by-law of a private corporation, is valid, which vests in the judicatory or governing body of the corporation an indefinite power of fining, in the exercise of a mere discretion. If the municipal assembly of the city of St. Louis should pass an ordinance providing that, for a disturbance of the peace, the offender should be fined in the discretion of the police court, no lawyer would doubt that the ordinance, so far as it undertook to establish the power to fine, would be merely void, and that it would not authorize the police judge to impose any fine for the described offense, however small. Here, the power to fine is left in the absolute discretion of the directors, unlimited by any other words except the words "as they may determine." The learned judge of the circuit court doubted whether the directors had power to impose any fine under this provision; but we find that, on the principles of the common law, the question is clear of doubt.

*Third.* But, if section 9 of rule 4, giving this discretionary power to fine, was one of the rules and regulations continued in force by the provision of the

charter above quoted, is it, therefore, to be regarded as standing as a part of the charter itself, until altered or repealed by the corporation in the manner provided by its other rules and regulations? The charter itself speaks of these rules and regulations as by-laws, and not as part of the charter, and in no way sanctions their validity, but simply provides that, until altered or amended, they should continue as the by-laws of the corporation. Whether or not they are valid as by-laws, must depend on rules which determine their validity as by-laws of a corporation.

*Fourth.* But, if we are wrong in this, there is another principle of the common law equally well settled, which shows that the suspension of the plaintiff for the non-payment of this fine was illegal. No power to suspend for the non-payment of such a fine is found in the charter or regulations of the corporation, unless it exists in the word "misconduct," which we have already quoted in a provision of the charter and italicized. But we are of opinion that the misconduct referred to in the provision is not the misconduct of refusing to pay a pecuniary fine, where the member in good faith takes the position that the directors have no power to impose the fine. Such a refusal cannot, in our opinion, be deemed misconduct within the meaning of the charter provision. The rules of the common law concede to corporations the inherent power of enforcing their by-laws by pecuniary penalties, provided that they are certain, within the rule above stated. *The Chamberlain of London's Case*, 5 Co. Rep. 63b.; *City of London's Case*, 8 Co. Rep. 253. But, in the absence of larger authority by force of custom, they could *only* enforce them by pecuniary penalties, and could not add to such penalties a forfeiture of goods, since forfeitures were contrary to Magna Charta. *City of London's Case, supra,* recognized in *Master-Stevedores' Ass'n v. Walsh,* 2 Daly, 14. See also, *Leathley v. Webster,*

Sayer, 252. In view of these principles, it has been held, that, unless authority to this end has been granted by the legislature, a corporation cannot enact a by-law, and annex thereto the sanction of a forfeiture of the membership of the members who violate it. "There can be no power to impose forfeitures, unless granted by clear legislative enactment. No such power is consistent with common law or ancient right, and it cannot be obtained from anything but the sovereignty. The only means for the enforcement of corporate charges and penalties is by action. Summary means and methods, unknown to the common law, must be authorized by express authority. And it would not be reasonable to enforce a pecuniary obligation or penalty by means disproportionate to its importance. The law of the land is made the test for analogies in cases where it affords analogies." *People v. Fire Department*, 31 Mich. 458, 465, opinion of the court by CAMPBELL, J. In the case before us, the membership of the plaintiff was not absolutely forfeited; he was not definitely expelled, but only suspended, pending the non-payment of the fine; but his suspension amounted to a deprivation of his rights as a member, *pro tanto*. It was a summary method of collecting a fine, imposed for a mere breach of discipline, and a method not authorized either by the charter or the rules and regulations, and prohibited by the principles of the common law. It was on this ground that the learned judge of the circuit court decided the case in favor of the plaintiff, and we must affirm his decision.

The judgment of the circuit court will accordingly be affirmed. It is so ordered. All the judges concur.