## A. BRANDENBURGER, Appellant, v. JEFFERSON CLUB ASSOCIATION et al., Respondents.

St. Louis Court of Appeals, March 26, 1901.

1. **Corporations, Private:** POWER OF CORPORATION TO EXPEL MEMBER. The disciplinary power of a corporation, organized under and by virtue of chapter 12, art. 11, Revised Statutes 1899 (such as the Jefferson Club is), over its members, and its right to try, suspend and expel them for alleged delinquencies, will not be interfered with by the courts except when abused.

2. **Courts, Duty of.** It is the duty of the courts to see that statutes are obeyed, and as such clubs, as the one in the case at bar, must be organized in this State in pursuance of the statutes, alleged infractions of the statutes are matters of judicial cognizance.

3. **By-Laws of the Jefferson Club.** The by-laws of the Jefferson Club are substantially in harmony with the provisions of the statutes, and authorize the expulsion of a member for any act "which tends unqualifiedly to lower the reputation of the association, to retard its progress or to defeat its ends."

Brandenburger v. Jefferson Club.

4. ———: ———: EXPULSION OF MEMBER. In the case at bar, the charges made against the appellant were sufficient in law to justify his expulsion.

5. ———: ———: ———: JURISDICTION OF BOARD OF DIRECTORS. Where the by-laws of an association commit to the board of directors the power to expel a member, such by-laws are valid.

6. ———: ———: ———. And the courts simply inquire whether the corporate authorities have acted within their powers in expelling a member, after giving the accused reasonable notice, and whether they have exercised their power fairly and in good faith.

7. ———: ———: ———: REINSTATEMENT OF MEMBER: JURISDICTION OF COURTS. And in the case at bar, all these rights of the appellant were carefully respected by the board of directors in the disposition of the charges against him, and these things being true, the civil courts are powerless to reinstate him.

8. ———: ———: ———: BY-LAWS: REMEDIES. The remedies provided by the by-laws of the corporation for appeal must be exhausted before recourse can be had to the civil courts.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The Jefferson Club Association was organized under chapter 42, article 10, Revised Statutes 1889 (chapter 12, article 11, Revised Statutes 1899). Article 11 of the articles of association says: "The object of this association shall be to preserve, defend and advance the essential principles of pure government as formulated by Thomas Jefferson and embodied in the history of the Democratic party; to establish a clubhouse to promote the rational amusements of bowling, billiards, pool, chess, checkers and other like games, and to educate its members through the medium of papers, magazines, periodicals, books,

lectures and debates in literature and the science of government, history and such like matters.    For the accomplishment of these objects it has power to establish branch organizations, to maintain a library, reading room, clubrooms, to lease suitable buildings and furniture and to acquire by purchase or gifts, such personal and real property as may be necessary to carry out its objects, and to receive subscriptions and donations of money to be applied to the purposes of the society.    The membership is limited to male citizens who believe that the political teachings of Thomas Jefferson furnish the best basis for good government; are in favor of honest administration of public offices and who pledge themselves to support the regular platforms of the Democratic party."    The substance of these qualifications is required to be placed on application cards, the attention of the applicant directed thereto and the signing of the card or acceptance of membership is taken as evidence that the applicant gives the required pledge.    The articles of agreement provide that the association shall have the power "to fix the qualifications and conditions of membership, make by-laws for its government not inconsistent with the Constitution or laws of the United States or of this State, and to alter the same at its pleasure."    One of the by-laws, to-wit, section 1, article 8, thereof, provides in regard to the expulsion of a member as follows: "Any three members of this association may, at any time in writing, to the secretary, prefer charges for good cause against any member, and after ten days' notice in writing to the member so charged, the same shall be considered by the board of directors of this association in executive session, at a regular or special meeting, notice of same having been given to all members thereof.    Each side shall have the right to be present at such meeting, to examine and cross-examine witnesses and to address the board in person, or by counsel, who is a member of this association.    If a majority of the members present vote in

favor thereof, the member charged may be expelled. Any act which tends unqualifiedly to lower the reputation of this association, to retard its progress, or to defeat its ends, shall be considered such good cause, but shall not be considered the only cause for expulsion. If the member is convicted by the board of directors he may request the president of the association to refer said charges to the whole association, and if three or more members of the board of directors join in said request in writing, the same shall be done, and said charges considered in like manner, *de novo,* by the whole association." There is another by-law, that any elective or appointive officer of the club may be removed from office for cause at any meeting of the association, after he has had fifteen days' notice of the charges against him and of the date of the meeting for the hearing of the same, by two-thirds of the votes cast. The board of directors is thirteen in number and the president, three vice-presidents, secretary and treasurer are exofficio members of it.

The relator was a member of the club, its treasurer, and, therefore, a director at the time of the occurrences complained of in the petition. On February 20, 1900, a communication was addressed to the secretary of the association by three members, in which the provision of the by-law in regard to expulsion was referred to, and charges, alleged to be sufficient ground for his expulsion, laid against the relator in twelve paragraphs. Mr. Brandenburger was forthwith served with a written copy of the communication, together with notice for him to appear before the board of directors on the third day of March, thereafter, when the alleged facts would be investigated. The meeting of the board was duly held on the last-named date at which the relator was present with his counsel. Before any evidence was taken, the following protest was lodged with the board:

"St. Louis, Mo., March 3, 1900.

"To the Jefferson Club Association and its Officers and Board of Directors:

"I deny and protest against the jurisdiction or authority of said club, or its board of directors, or officers, to proceed with the trial of any of the charges hitherto made in writing and served upon me, of date February 20, 1900, and signed by Clinton Boogher, Andrew J. Butler and Thad. C. Harris, and I deny that said charges constitute any offense on my part against its constitution, or any of the by-laws or rules or regulations, even if true, which I deny is the fact, and I demand that said charges be dismissed, and that no action be taken by said club upon same.

"W. A. Brandenburger."

Thereupon, the hearing proceeded and witnesses were examined as to the truth of the matters contained in the charges. The appellant, by his counsel, participated in the proceedings, making numerous objections to the testimony and the rulings of the board. Mr. Brandenburger refused to make any statement himself concerning the truth or falsity of the accusation, although repeatedly requested to do so by the president and other members of the board.

At the conclusion of the evidence, his counsel made an argument in his behalf. Thereupon, the directors retired for consideration and then returned and reported their decision, which was that the charges were sustained, and the appellant, by a unanimous vote, was expelled from the club. The decision was announced by the president, concluding with the following words: "I have been instructed by the board to say to you that we all of us have the warmest personal feelings for you and nothing will prescribe or alter these feelings, that this is a matter in which we believe the welfare of the club demands us

to take this action." The appellant immediately addressed a communication to the president reaffirming his protest against the jurisdiction of the association, its board or any of its officers to try him on any of the charges, and requesting the president of the association to refer said charges to the whole association and that they be dismissed and the illegal action of the board be corrected. This communication was not signed by any director, nor was a request made by either the appellant or his counsel for signatures thereto.

On the seventh day of March, following, the petition in this cause was filed and on the sixteenth an alternative writ of mandamus issued to the respondents, who are the directors of the club, and the club itself. The alternative writ states, and the return admits, various matters, among which are the incorporation of the association, its ownership of a lease on a building in the city of St. Louis and of a large library, billiard rooms, gymnasium and other properties which cost many thousands of dollars. The petition also charges that certain members of the board of directors and of the club are endeavoring to convert it into a political machine, destroy free speech and independent action and thought on the part of its members, in order that the organization might be used and manipulated by such officers and members to carry out their own designs. That with a view to realizing such unlawful objects and in order to get rid of the influence of the relator in opposition thereto, the board of directors had wrongfully induced three members to make the charges in question against him. It is further stated that the members who preferred the charges were used by the board in the manner aforesaid to deprive the relator of his place on the board and in the association and fill it with a pliant tool and servant who would do their bidding, in order thereby to indefinitely retard the essential principles of pure government. It is further stated that the relator was not ac-

cused in good faith; that the defendants were without juris-diction to try him; that the trial was against his protest, and the conviction without evidence. The relator, therefore, prays that he may be reinstated in his rights as a member and officer. The return of the respondents sets up the proceedings by the board leading up to the expulsion, denies all allegations of mal-ice, bad faith, or sinister motives, claims that everything was regular and lawful and that the appellant had a full opportunty accorded to him to make a defense, but refused to avail himself of it.

The charges themselves were substantially these:

First. Mr. Brandenburger had allied himself with and was one of the leaders of a political organization to which he declared he owed allegiance superior to what he owed to the Jefferson Club; that said organization was antagonistic to the Jefferson Club and formed for the purpose of organizing a bolt from the St. Louis city Democratic convention, unless said convention would adopt certain theories and make them the sole issue in the municipal campaign.

Second. That at a meeting of said rival association at Bowman's Hall on the ninth of February, 1900, the appellant made the following statement: "I am a member of the Jef-ferson Club and for three years I have been on its board of directors; for the same period I have been its treasurer. I speak authoritatively when I say you can hope for nothing from men high up in political parties. We must make our demands and they must fall in line. It is laughable to hear them talk. I sit in their councils and I ought to know. No party which does not declare for these reforms shall receive our support."

Third. That he gave out an interview to a Republican newspaper on the sixteenth day of February, 1900, in which he stated, "The Jefferson Club is a one-man organization, run

in the interest of spoilsmen and not for the principles of Democracy."

Fourth. That at a meeting of the board of directors of the respondent club, which was called to discuss the actions and doings of Mr. Brandenburger, the latter said he would be willing to resign from the board of directors if it were not for the fact that such resignation would be detrimental to the interests of the organization formed at Bowman's Hall, which he considered of greater importance than the success of the Jefferson Club or the Democratic party. That, thereupon, being requested to relinquish his allegiance to one club or the other for the reason that he could not be an honest agent of two principals, he said that his allegiance to the organization formed at Bowman's Hall was of greater importance than his allegiance to the Jefferson Club.

Fifth. That he stated in the hall of the Jefferson Club on the fifteenth day of February, before the members there assembled, that he would not support the regular platform to be adopted by the Democratic party in the next city convention unless the platform should embrace certain theories, provided some other party should adopt a platform which did embrace those theories. It was further alleged that the position of Brandenburger, being an officer of the association, gave him full knowledge of its internal affairs and enabled him to secure and make use of political information by giving it to the other organization to which he claimed greater fealty.

It may be said that no evidence was adduced to prove that the appellant had charged the Jefferson Club with being a one-man power. All of the testimony on the trial before the board of directors was taken down in shorthand and introduced on the trial in this cause in the circuit court. A peremptory writ was denied there, from which judgment this appeal was taken.

*Lee Meriwether* for appellant.

(1)   If, in the proceedings for appellant's expulsion, respondents did not exercise their powers fairly and in good faith, the courts may interfere and set the expulsion aside. And it is the court's province to determine whether their proceedings were in good faith.   Otto v. Tailor's U., 75 Cal. 313; State v. Temp. Ben. Soc., 42. Mo. App. 490; Albers v. Merch. Ex., 39 Mo. App. 583; Mulroy v. K. of H., 28 Mo. App. 463. Even though the by-law upon which respondents rest their right to expel appellant were reasonable and legal, respondents have not "an uncontrollable discretion in its' construction and enforcement.   They can not, under pretext of enforcing this rule * * * make it the instrument of * * * political proscription."   State v. Med. Soc., 38 Ga. 608, and quoted approvingly in 55 Mo. App. 545.   (2) Appellant has a property interest in the Jefferson Club Association.   "Such rights are a franchise, and expulsion is disfranchisement."   People v. Med. Soc., 24 How. Pr. 216; 2 Waterman on Corp., p. 556, note 562, sec. 313; 28 Mo. App. 471; Lysaght v. Stonemasons, 55 Mo. App. 542 and 546.   (3)   "When the society accepted a charter, it became a private civil corporation; the corporation then acquired a property in the franchise, and every * * * * member acquired a like property of which he could not be deprived without due process of law."   Evans v. Phil. Club, 50 Pa. St. 107; State v. Ga. Med. Soc., 38 Ga. 608. "If the by-laws violated were not reasonable they can not be enforced.   A by-law made in pursuance of an express power to make such law, if contrary to the common law, or to a legal enactment, is void."   State v. Merch. Ex., 2 Mo. App. 99.   (4) No power to enact by-laws unless power thereto is given by the charter.   Courts will set aside expulsion for offenses for which the society has no express power to expel and which are not in-

jurious to the society or contrary to law. As to what is injurious see 2 Daly, 358 and 329. Albers v. Merch. Ex., 39 Mo. App. 594; Mulroy v. K. of H., 28 Mo. App. 463. (5) It is a dangerous doctrine to allow expulsion for reasons not in the charter, but declared first in by-laws adopted under excitement of the hour. Mulroy v. K. of H., 28 Mo. App. 472.

*Given Campbell* for respondents.

(1) Before a peremptory writ will issue, the relator is bound to satisfy the court that there is a clear legal duty incumbent upon the respondents to comply with all the requirements contained in the alternative writ, and the alternative writ should state facts to show that the relator ought to be restored. High, Extraordinary Remedies (3 Ed.), sec. 450; 2 Buls. 122. (2) Express power is given the Jefferson Club Association to make by-laws for its own government, not inconsistent with the Constitution and laws of the United States, or of this State, and to alter the same at its own pleasure. Charter, sec. 3. (3) Non-pecuniary or non-trading corporations have the inherent power, even where the charters are silent on the subject, to expel a member after his conviction of some infamous offense, or for the commission of some act which tends to injure or thwart the purposes of the corporation. State ex rel. v. Chamber of Commerce, 20 Wis. 63; Dickens v. Chamber of Commerce, 29 Wis. 63; Mulroy v. Knights of Honor, 28 Mo. App. 463. (4) The chapter and articles of the charter under which the Jefferson Club Association was incorporated provided that it should have power to expel a member guilty "of any offense which affected the interests or good government of the corporation; or is indictable by the laws of the land." The power to disfranchise is, therefore, as expressly conferred as if it had been written in the charter of the

association. R. S. 1889, sec. 2831. (5) Special powers of removal may be delegated, as in this case, to the board of directors. Cowper's Reports, 502, 534; Douglas' Reports, 149-153 and 155; Fifth Modern Reports, 259; Angell and Ames on Corp., sec. 432.

GOODE, J.—There are rights and privileges incident to membership in an organization like the respondent club, independent of any property interests which, if not valuable, are prized as desirable, and the esteem in which they are held is likely to wax instead of wane, because the trend of social forces bids fair to continue towards association in habits and efforts. The growth of urban populations, enlarged means of intercourse, wide diffusion of knowledge with an attendant broadening of popular interests, extension of political power among the masses and other tendencies of the age, have rapidly multiplied societies formed for the prosecution of various purposes, religious, ethical, political, commercial and social. The law has not lingered; along with the phase of contemporary life has gone a development of the rules needed to appropriately regulate these corporations, which have characteristics of their own and call for an application of legal principles unlike that made to companies created for gainful purposes. The store set by the privileges of membership is proven by the number of cases in which their protection by the courts has been invoked, resulting in the status of such societies and in the sphere in which they are self-governing and beyond which their acts are reviewable, being well defined. Regarded from a legal standpoint, they resemble more the old English proprietary clubs or voluntary societies than anything else. Many of the cases liken them to benefit companies, but it is believed there is a growing disposition in the courts to distinguish between the two. This would be more logical, for

Brandenburger v. Jefferson Club.

they are certainly radically distinct in both nature and purpose, the main object of one being pecuniary relief and of the other, either pleasure, improvement, advantages or influence by co-operation. These ends have colored and moulded the law relating to them. It is obvious, success in attaining them depends largely on unity of purpose and harmony of feeling among the constituency. Such an institution is unusually disturbed by perverse, uncongenial members, who are out of sympathy with the tone and purpose of the organization. It is, therefore, acknowledged that wide power in admitting, rejecting or suspending members must be allowed them. Nor does this power, as appellant argues, tend to the abridgement of individual liberty of speech or action, which the law always sedulously endeavors to preserve. It recognizes, however, the fact that associations as well as individuals have rights, that associated as well as individual effort is useful, and that discordant elements disrupt societies and hinder their effective working. Any citizen, with views at all reasonable, can readily find others of his turn of mind, willing to act or assemble with him. It is, therefore, improper and unnecessary for him to remain in a body whose principles or methods he feels bound by his conscience to oppose. Nor ought a society to retain a person who refuses to conform to its rules, to assist in accomplishing its objects, or makes himself obnoxious to the majority. These views are maintained and enforced by the authorities, which have settled the rules applicable to this case.

It may be said, generally, that the disciplinary power of a corporation of the class to which the Jefferson Club belongs, over its members, and its rights to try, suspend and expel them for alleged delinquencies, is not interfered with by the courts except when abused. If a fair mode of trial is provided, with due notice to the accused, an opportunity to defend himself

and a decision rendered in good faith, not from caprice or ill-will, the civil courts will not supersede it. It has been often doubted indeed, whether jurisdiction will be entertained at all, unless a property right is involved, and there are many decisions that it will not be. These were mostly in cases where the association was purely voluntary, not incorporated. The admissions in the pleadings, perhaps, show a sufficient property right in the relator to give him a standing in the courts. But we need not pause to ascertain the correct rule on the subject independent of an express enactment, for the statute under which the respondent club was created, and by which it acquired its franchises, provides for the adoption of by-laws regulating expulsion, and says members may be expelled if "guilty of an offense which affects the interests and good government of a corporation, or is indictable by the laws of the land." It is the duty of the courts to see that statutes are obeyed, and as such clubs must be organized in this State pursuant to that statute, alleged infractions of it are matters of judicial cognizance. The by-law of the respondent club is substantially in harmony with the statutory provision. It authorizes the expulsion of a member for any act "which tends unqualifiedly to lower the reputation of the association, to retard its progress or to defeat its ends." This is nearly equivalent to saying, "any acts which affect the interests and good government of the corporation." We hold, then, that there is no conflict between the by-law in question and the laws of the State.

Do the offenses with which the relator was charged fall within the statute or the by-law? In other words, did they affect "the interests and good government of the corporation," or "tend unqualifiedly to lower the reputation of the association, retard its progress or defeat its ends?" We may leave out of view, in answering this question, the threat of the appellant that he would not support the nominations made by the

Brandenburger v. Jefferson Club.

Democratic party for municipal offices at the election then ensuing, unless the platform suited him; because the threat may have been an idle one, or the relator on further reflection, might have decided differently. At all events, we deem the remark of too light a nature to justify his expulsion.

But it appears that the relator, at a meeting of a rival political club, organized with reference to the coming municipal election, had declared he was a member of the Jefferson Club and had been on its board of directors for more than three years, and its treasurer. He used these remarks prefatory to the further statements that nothing could be hoped for from men high up in political parties; that it was laughable to hear them talk—he had sat in their councils and ought to know. It further appears that when called to account by the directory for his conduct and talk, the appellant declared he would resign from the board of directors if he did not fear his resignation would injure another political organization. His resignation was desired, because, it was thought his position was inconsistent by reason of his connection with the Bowman Hall club. The appellant, however, said he could not consistently resign, for it might be construed so that it would injure the movement he had undertaken with the rest at Bowman Hall. All these utterances may have been patriotically made by the relator and for that matter, may have been wise. On account of the consideration with which he was treated during his trial by the directors, we must believe they esteemed him a sincere man. But it is palpable his remarks might effect detrimentally the interests or good government of the Jefferson Club, tend to retard its progress and defeat its ends. We can not hold one is a good member of an association whose purpose in remaining in it or in exercising official duty is to aid a rival organization—a group with which he is more in accord. Such behavior

Vol 88 app—11

strikes at the heart of discipline, effective government, and the club's welfare. The charges made against the appellant are, therefore, such as were sufficient in law to justify his expulsion. They were fundamentally inconsistent with the duties as a member. We think considerable discretion should be allowed a society in determining what is mischievous conduct on the part of a member. This does not mean that they may arbitrarily denounce innocent acts or words as culpable. Reason and good faith must rule their judgments; but this ought not to be too narrowly scrutinized, because the majority can better determine, ordinarily, what is hurtful than any one outside.

While one purpose of this organization was strictly political, it had others—recreation, amusement, reading and agreeable social intercourse. Assertions calculated to provoke ill-will and engender animosity, as were some of those made by the relator, might very seriously mar the influence of the institution. In Littleton v. Blackburn, 45 L. J. (N. S.), 19, the court refused to interfere where the member had written a discourteous letter criticising the management, and was expelled under a power to expel "for conduct injurious to the character and interests of the club." So where the complainant had written an article reflecting on a fellow member. Dawkins v. Antrobus, 17 L. R. Chd. 615. So where a member had said a committee was a packed borough and could pass such by-laws as it pleased. Lambert v. Addison, 46 L. T. (N. S.), 20. And where one who belonged to a conservative club had pledged himself to vote for three liberal candidates. Hopkinson v. Marquis of Exeter, L. R. 5 Eq. 63. And where a member had been expelled for using insulting language to another member in the clubhouse. Commonwealth ex rel. v. Union League, 135 Pa. St. 301. The case last cited is a valuable authority, for the organization was in all material respects similar to the Jefferson Club, being partly political and partly

social in its objects. In each of the cases, the court was unable to say that the proceedings against the accused were unwarranted or the decision influenced by wrong motives.

A careful reading of the record has convinced us that the directors of the Jefferson Club, far from being moved by malice or sinister purposes in their treatment of the appellant, cherished kindly feelings toward him and were anxious for him to offer any evidence or explanation that would exculpate him. He was importuned, over and over again, to make a statement in his own behalf, but steadily and obstinately refused to utter a word in addition to his protest against the jurisdiction of either the board or the club itself. Neither during his trial in the order nor in the circuit court was any proof adduced tending to support the allegations of the petition and alternative writ, of malice and unworthy motives on the part of the respondents. We can not take statements in pleadings for facts nor does it indicate a proper spirit to make such harsh charges without at least attempting to prove them.

Much is said in the petition about the intentions of certain officers of the Jefferson Club to convert it into a political machine; nothing of the kind was proven. Much is also said about its spirit and tendency being subversive of the teaching of Thomas Jefferson. No court would assume *ex cathedra* to pronounce what the teachings of Jefferson or any other sage really were, or whether any society was upholding them or not. In a general way, it would perhaps be conceded by every one, that Jefferson's doctrines look towards popular instead of class rule, and political equality instead of prerogative or privilege. Many secular organizations doubtless lay claim to faith in those doctrines, although they are opposed to each other, as many religious sects lay claim to sacred oracles. There may be truth in all such claims. It suffices to say, that as long as the majortiy of an organization, like the respondent club,

is satisfied with its spirit and acts, whether that spirit or those acts are in fact in keeping with its professions or not, courts will not listen to complaints from members. Such a course would be an insupportable meddling with private rights.

We come next to inquire whether there was jurisdiction by the board of directors, and whether the proceedings were regular. The power to try and expel is vested either in such associations at large, or in some committee to which it has been delegated. The by-laws of the Jefferson Club committed that unpleasant duty to the board of directors. Such provisions are valid. This precise point was determined in a case where the legality of expulsion was challenged solely on the ground that jurisdiction must be exercised by the entire membership to whom the statute had confided it, it being in the nature of a trust and not to be delegated to a minority. The trial there, as here, was by the board of directors. Pitcher v. Board of Trade, 22 Ill. App. 319; see also People v. Board of Trade, 80 Ill. 104; Black & White Smith Co. v. Vandyke, 2 Whart. 309; Commonwealth v. Union League, 35 Pa. St. 301; Husey v. Gallagher, 61 Ga. 86; People v. Commercial Ass'n, 18 Abb. Pr. 271; White v. Brunnell, 2 Daly, 329; People v. Board of Trade, 45 Ill. 112; Green v. A. M. E. Soc., 1 S. & R. 254. The relator contends, however, that inasmuch as he was treasurer of the club and ex officio member of the board, and as such was only removable from the office at a meeting of the association by a two-thirds vote, he was not amenable to the board of directors. The provision for removing officers was simply a by-law adopted by the same authority, to-wit, by the association itself, which adopted the by-law providing how members might be tried and expelled. One of these by-laws has no higher sanction nor dignity than the other. They relate to entirely distinct matters. We can not say one is valid and the other void. It is apparent that nobody could properly remove

officials from their offices for wrongful acts therein, except the association which elected them; otherwise the directors might be trying each other for misfeasance as directors. There was no inconsistency in providing that any member might be removed from the club by the board of directors and providing also that any officer could be removed from office only by the membership. Nor does the fact that the accused might happen to be an officer, give him any greater rights or higher standing than any other member enjoyed. If an officer could not be expelled by a vote of the board of directors, there was no mode provided by which he could be. There is no doubt, then, that the board were the persons to exercise jurisdiction in this case, and they exercised it properly. The charges were served on the relator, he was given ample notice of when they would be heard, was present in person and by his counsel, was afforded full opportunity to make his defense, and was formally and apparently conscientiously tried. One director, who was a witness, declined to take part in the decision.

Proceedings in cases of this kind need not be technically regular. Albers v. Merchants Ex., 39 Mo. App. 583; Commonwealth v. Union League, 135 Pa. St. loc. cit. 131; Dawkins v. Antrobus, 17 L. R. Ch. D., supra. But so far as we can discover they were, in the trial of the relator. The courts simply inquire whether the corporate authorities have acted within their powers, after giving the accused reasonable notice, and whether they have exercised their powers fairly and in good faith. Beyond these limits they do not take cognizance. Albers v. Merchants Ex., supra; State ex rel. v. Grand Lodge, 8 Mo. App. 148; State ex rel. v. Farris, 45 Mo. 147; Lloyd v. Joaring, 6 Ves. 773; Dawkins v. Antrobus, supra; Commonwealth v. Ben. Soc., 8 Watts. & S. 247; Hopkinson v. Marquis of Exeter, L. R. 5 Eq. 63. Corporate judicatures are not permitted to stigmatize a citizen, bring him into disrepute, or

wantonly humiliate him by malicious proceedings, nor are they allowed to ignore the fundamental right to notice and a hearing. Mulroy v. Knights of Honor, 28 Mo. App. 463; Farmer v. B. of T., 78 Mo. App. 557; Labouchere v. Earl of Wharncliffe, L. R. Ch. D. 346; Connelly v. Masonic Ass'n, 58 Conn. 552. The requirement most stringently insisted upon, especially when a property right is at stake, is reasonable notice to the accused member. Loubat v. LeRoy, 40 Hun. 546; Dawkins v. Antrobus, supra; Labouchere v. Earl of Wharncliffe, L. R. Ch. T. 346; Com. v. German Soc., 15 Pa. St. 251; People v. Ins. Co., 44 How. Pr. 468; Koehler v. Mech. Aid. Soc., 22 Mich. 87; Mid. Soc. v. Weatherly, 75 Ala. 248. All these rights of the appellant were carefully respected by the board of directors in the disposition of the charges against him. That being true, and the offenses being such as by statute he could be deprived of membership for, the civil courts are powerless, under the well-established doctrine of the law, to reinstate him. State ex rel. v. Farris, 45 Mo. 197; Albers v. Merchants Ex., supra; Schmidt v. Lincoln Lodge, 84 Ky. 490; State ex rel. v. Lodge, 8 Mo. App. 148; Slater v. Supreme Lodge, 76 Mo. App. 387; Lysaght v. Stonemasons' Ass'n, 55 Mo. 538; Stock Ass'n v. West, 76 Texas, 461; Manning v. San Antonio Club, 63 Texas 166; B. & W. Smith Co. v. Vandyke, 2 Whart, supra; Commonwealth v. Union League, supra; Commonwealth v. Ben. Soc., 8 Watts & S. 247; Connelly v. Mason Ass'n, 58 Conn. 552; People v. B. of T., 80 Ill. 134; White v. Brunnell, 3 Abb. Pr. (N. S.) 318.

But there is another reason why the writ must fail. The section of the by-laws of the respondent club which provides for the trial of an offending member by the board of directors, provides also for an appeal from their decision. The convicted defendant may request the president of the association to refer the charges against him to the whole association and if three or

more members of the board of directors join in such request in writing the matter is tried *de novo* by the club. Not only did the relator fail to avail himself of this further remedy, but it was testified by his counsel at the trial in the circuit court that he made no endeavor to do so, further than to request the president to refer it. He did not try to comply with the by-law by procuring the signatures of three members of the board to his request. While, perhaps, if he had made this attempt and failed he would not have been debarred from further relief thereby, he was certainly debarred by the fact that he did not make an attempt. He stood, from the first to the last, on the supposed want of jurisdiction in the board—indeed the protest he lodged, challenged likewise the jurisdiction of the club itself. This appeal from one tribunal of the corporation to another need not be taken when the proceedings exceed the jurisdiction and are therefore totally void; but must be taken when they are within it and prima facie valid. We believe the authorities are unanimous in holding remedies within the corporation must be exhausted before recourse can be had to the civil courts. Mulroy v. K. of H., 28 Mo. App. 463; Karcher v. K. of H., 137 Mass. 368; Chamberlain v. Lincoln Lodge, 86 Ill. 598; People v. B. of T., 80 Ill. 134; Laford v. Beans, 81 N. Y. 507; Swaine v. Miller, 72 Mo. App. 446. The courts will not act as appellate tribunals in such controversies. Baird v. Wells, 31 Am. and Eng. Corp. Cas.; Fischer v. Keane, 11 Ch. D. 353.

It follows from the foregoing considerations that the circuit court did not err in refusing the peremptory writ of mandamus as prayed by the relator. The judgment is affirmed. All concur. Judge *Bond* in the result only.