148      8 MISSOURI APPEAL REPORTS.

STATE OF MISSOURI, EX REL. JAMES P. POULSON ET AL., Appellant, v. GRAND LODGE OF MISSOURI, INDEPENDENT ORDER OF ODD FELLOWS, ET AL., Respondents.

December 16, 1879.

An incorporated lodge of Odd Fellows has the right, through its proper officers and in accordance with its established rules, to determine who are not members thereof, and the courts will leave that question to be determined by the lodge itself, through the judicial action of its proper officers, regardless of whether the charter of the lodge in which membership is claimed gives, in express terms, such power to these officers.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

DAVID MURPHY, for the appellant: It is not a sufficient return to allege generally that the Cosmos Lodge has become inharmonious and factionable, to justify the first step made in this arbitrary exercise of " one-man power."— High on Ex. Leg. Rem., sect. 467 ; *Rex* v. *Burgesses of Doncaster*, Ld. Raym. 1565 ; *Roehler* v. *Mechanics' Aid Soc.*, 22 Mich. 86. Courts of law will inquire into the reasonableness of the by-laws of an incorporated society ; also the regularity of the proceedings, and determine therefrom whether, or not, the relators have been duly expelled. — *Harwood* v. *Marshall*, 10 Md. 451 ; *Society* v. *The Commonwealth*, 52 Pa. St. 125 ; *The Commonwealth* v. *German Soc.*, 15 Pa. St. 251 ; *Rex* v. *Liverpool*, Burr. 723 ; *The Commonwealth* v. *St. Patrick's Benevolent Soc.*, 2 Binn. 441 ; *The State, ex rel. Kennedy*, v. *Union Merchants' Exchange*, 2 Mo. App. 96 ; *The People* v. *Medical Soc. of Erie*, 32 N. Y. 187 ; *Evans* v. *Philadelphia Club*, 14 Wright (Pa.), 107 ; Ang. & Ames on Corp. (10th ed.) 439, 440, sects. 408–412 ; id. 713, sect. 704. Want of notice, and where proceedings are characterized by irregularity and a spirit of malice on the part of the other corporators, and a predetermination to expel, a proper case is presented for the exercise of jurisdiction. — *De Lacy* v.

*Neuse River Co.*, 1 Hawks, 274; *The State* v. *Georgia Medical Soc.*, 38 Ga. 608. The Grand lodge is a corporation, and subject to the rules of law applicable to other corporations. — *Barbaro* v. *Occidental Grove*, 4 Mo. App. 429.

RUSSELL & WENDLING, for the respondents : Of the writ of *mandamus.* — *Mansfield* v. *Fuller*, 50 Mo. 338 ; *The State* v. *Bank*, 10 Wend. 25 ; *The State ex rel.* v. *St. Louis Circuit Court*, 1 Mo. App. 543 ; *The State ex rel.* v. *Trustees*, 67 Mo. 155. *Mandamus* will not lie in this case. — High on Ex. Leg. Rem., sects. 302, 457 ; *Burrows* v. *Society*, 12 Cush. 482. The civil courts will not interfere to reverse the decisions and proceedings of voluntary charitable associations for the mere purpose of determining their jurisdiction, nor for the purpose of interfering with the discipline of its members. — *The People ex rel.* v. *Board of Trade*, 80 Ill. 134 ; *Third Church* v. *Wetheral*, 3 Paige, 296 ; *Sawyer* v. *Cupperly*, 7 Paige, 281 ; *Robertson* v. *Bullions*, 9 Barb. 64 ; *Dufendorf* v. *Church*, 20 Johns, 12 ; 3 Barr, 282 ; *Chase* v. *Cheney*, 58 Ill. 536 ; *Sherman* v. *Frost*, 3 B. Mon. 258 ; *Walker* v. *Wainwright*, 16 Barb. 486. An Odd Fellows' lodge is such an association. — *Society* v. *The Commonwealth*, 52 Pa. St. 125 ; *The Commonwealth* v. *Society*, 2 Binn. 441 ; *The Commonwealth* v. *Society*, 5 Binn. 486.

BAKEWELL, J., delivered the opinion of the court.

The petition of the four relators sets forth that the Independent Order of Odd Fellows is a benevolent association, existing in Missouri, and consisting of a parent organization incorporated under the name of the Grand Lodge of Missouri of the Independent Order of Odd Fellows, and also of various subordinate lodges, the representatives of which constitute said Grand Lodge, and who make all the laws governing said order, with recognized authority to enforce all its laws and orders ; that the relators were and

are members in good standing of the order, having been admitted under the laws of the Grand Lodge into one of the subordinate lodges, called Cosmos Lodge 196, of said order, which is subject to the Grand Lodge ; that defendants Fahey and Fisher are respectively the presiding officer and secretary of Cosmos Lodge, and, as such, agents and officers of the Grand Lodge ; that the relators have always paid their dues and obeyed all the laws of the Grand Lodge ; by reason of which they were and are entitled to their share of the relief-fund of Cosmos Lodge, amounting to $1,000, and also to their share of personal property of Cosmos Lodge, worth $500, and also to the privileges belonging to members of the order, which are of a value not to be estimated in money, but very valuable to the relators ; that on November 10, 1876, while these facts existed, the Grand Lodge, unlawfully, without cause, and without trial or other lawful proceedings, deprived the relators of the right to work and meet as members of said order, carried away from Cosmos Lodge its property, and converted the same to the use of the Grand Lodge ; and on August 7, 1877, the said Grand Lodge, in defiance of law, expelled the relators from membership of the order, without any notice ; that the relators petitioned the Grand Lodge of Missouri that they might be permitted to enjoy the rights to which they were entitled, and tendered to defendants Fahey and Fisher all dues, and offered to do all that they might be legally required to do under the laws of the order, but that Fahey and Fisher refused to admit the relators to the rights of members, and drove them from the lodge-room.    The relators pray a writ of *mandamus* directed to the defendants, commanding them to restore the relators to their rights as members of the Order of Odd Fellows.

The issuing of an alternative writ was waived, and the defendants filed an answer, to which the relators demurred. It was stipulated that the right of the relators to a peremp-

tory writ should be determined upon the pleadings as thus made up.

The answer, which is very long, alleges in substance that the Grand Lodge of Missouri, by its constitution and by-laws, recognizes that it derives its power from, and exercises them under, the Grand Lodge of the United States; that it is a voluntary charitable and benevolent organization for promoting social relations among its members, and not for any purposes of business; that Cosmos Lodge is not a body-corporate, and has no powers except those derived from the Grand Lodge of Missouri; that it was established by warrant of the Grand Lodge of Missouri, under a promise to obey all rules and orders of that Grand Lodge, in default of which its warrant may be suspended; that the relators, and every member of Cosmos Lodge, on offering themselves for initiation, subscribed a writing binding themselves to obey all rules of the lodge and of the order; that any property of Cosmos Lodge was subject, by the rules of the order and of the Grand Lodge of Missouri, to the absolute disposal of the Grand Lodge of Missouri; that such property, by the constitution of Cosmos Lodge, cannot be divided among the members, and by the constitution of the Grand Lodge such property, on the suppression of a subordinate lodge, reverts to the Grand Lodge; that by the constitution of the Grand Lodge of Missouri, any lodge violating the rules of the Grand Lodge of Missouri or of the Grand Lodge of the United States may be expelled, and the grand master may demand its charter, and it can only be restored on petition for restoration of its charter, made to the Grand Lodge by five members of the lodge thus dissolved; that the grand master of the Grand Lodge of Missouri has a general superintendence over all lodges in Missouri, and, by the laws of the Grand Lodge, may arrest the charter of any lodge, whenever in his judgment it is necessary to do so to preserve the unity, harmony, peace, and welfare of the order; that, by the laws of

the order, when a lodge is suspended all its members are suspended, and the subsequent restitution of its charter to a portion of the members restores only such members as are named in the warrant of restitution; that Cosmos Lodge was factious and quarrelsome, its members threatening open violence in their meetings, and thus bringing reproach on the order; that it therefore became the duty of the grand master to arrest its charter and suspend its members, which he did, and that he thereupon demanded and received from the officers and members of said lodge its property and effects, and turned them over to the Grand Lodge of the State, and reported his action to the Grand Lodge, by whom all his proceedings in this respect were approved; that the Cosmos Lodge was thus legally suspended; that afterwards, on August 17, 1877, on a petition signed by more than five of the suspended members of said lodge, the charter was restored to certain of the petitioners by name; that all the petitioners for restoration of the charter and effects of the lodge, among whom were the relators, assembled in the hall of the Grand Lodge and voted for those to whom the charter was to be restored, and these relators were not among the number to whom it was thus agreed, according to the constitution and rules of the order, that the charter should be restored; that the relators have never in due form applied to be reinstated in the lodge or in the order according to its rules, and are still suspended; that they, therefore, have not the pass-word; that since the restoration of Cosmos Lodge, the Grand Lodge has no jurisdiction over the restoration of these members, but they must, by rule, apply to Cosmos Lodge to be reinstated as members, which they have not done; that the expulsion complained of consists in this: that after the re-organization of Cosmos Lodge, it being found that the relators had not the pass-word, and that they were not entitled to the pass-word, the president and secretary of

Cosmos Lodge, in discharge of their duty, requested the relators to retire from the lodge-room, which they did.

To this answer a demurrer was interposed, that it was not sufficient in law to constitute a defence. The demurrer was overruled, and the relators declining further to plead, the petition was dismissed.

The demurrer was, we think, properly overruled. Persons who become members of voluntary benevolent or religious organizations are supposed to do so with a knowledge of the rules of the organization, and if they do not choose to submit to those rules they must voluntarily withdraw or submit to expulsion. It is manifest that no property right of the relators was violated, and that this is not the case of a member or shareholder of a business organization having a pecuniary interest in some common fund.

In this everything seems to have been done with the assent of the relators, either actual or constructive. By becoming members of the Cosmos Lodge they assented to everything done in accordance with the rules governing the Grand Lodge of Missouri, to which Cosmos Lodge was subordinate. They assented to having no vested right in what was called the property of the lodge; they assented to dissolution of their lodge at the discretion of the grand master; they assented to holding to the order through the lodge only; they expressly assented to the charter being restored only to such persons as should be named by ballot, and they voted at that election, and were not named among those to whom the charter was to be restored. The maxim *volenti non fit injuria* seems to be applicable, and to dispose of the case. Under the law of the association to which both parties belonged, the grand master had discretionary power to recall the charter of the lodge of which the relators were members. The courts cannot review this action of the grand master; it is enough that it appears that, according to the laws of the order of Odd Fellows, he had the power to act, and that the relators are expelled.

In that respect the relators subjected themselves to the power of the grand master, which has been regularly exercised, and they cannot invoke the supervising control of the civil courts, which have no more legal right, in this country, to interfere with the internal affairs of the order of Odd Fellows than they have to determine a theological controversy and to say whether members of a religious body are rightly excommunicated. It is quite well settled that such mere voluntary associations are left to enforce their own rules of discipline, without any interference from the courts. "Churches, Masonic bodies, Odd Fellows, and temperance lodges," says Judge Walker in *The People* v. *Board of Trade*, 80 Ill. 136, "are organized under a statutory charter ; but we presume no one would imagine that a court could take cognizance of a case arising in either of these organizations, to compel them to restore to membership a person suspended or expelled. They being organized by voluntary association, and not for the transaction of business, but for the purpose of inculcating their precepts and truths ; not for pecuniary gain, but for the advancement of morals and for the improvement of their members — are left to adopt their own constitutions, by-laws, and regulations for admitting or expelling their members."

It is true that in cases of corporations organized mainly with a view to business, gain, or for mutual subscriptions for the support of the members during sickness, the courts have examined into the reasonableness of by-laws providing for the expelling of a member ; and where the right of membership was pecuniarily valuable, they have examined whether the right of membership was taken away without an authority fairly derived from the charter or the nature of corporate bodies. *The Commonwealth* v. *St. Patrick's Soc.*, 2 Binn. 441. But where the charter itself, of an association of a business character, provides for an offence, directs the mode of proceeding, and authorizes the expulsion, if the proceedings have been regular they are conclusive, and

cannot be inquired into by the courts in any mode.  The society being authorized by its charter to act judicially, its sentence is like the award of a tribunal chosen by the party himself.  Ang. & Ames on Corp., sect. 418.  In the case of church societies, and organizations of Odd Fellows and Free Masons, it is conceived that, from the nature of the case, the Legislature, when granting a charter to each particular subdivision, church, or lodge, recognizes, the right of these associations, through their proper officers and in accordance with their established rules, to determine for themselves who are and who are not members of the order or society.  These organizations exist, with ramifications extending frequently throughout the civilized world, before the charter of the particular lodge or church society is granted; and in granting the charter to any particular lodge, or to any State lodge of Odd Fellows or Masons, or to any religious corporation, the Legislature necessarily recognizes the established rules and customs which bind these societies together, so far as they are not inconsistent with the laws and policy of the State. Where the organization is mainly for business or pecuniary interests of the members, the courts may look into the reasonableness of a by-law for expelling a member, and may inquire if it is authorized by the charter; but, even in this case, where the condition of membership is that the members shall be all of some particular religious denomination, or of some wide-spread and well-known society, such as the Masons, the courts would not undertake to determine as to this member or that, — whether he is in fact a Baptist, a Methodist, a Presbyterian, or a Free Mason, — but would leave that to be determined by the peculiar rules and the judicial action of the proper officers of such society, entirely regardless of the question whether the charter of the particular religious society or of the particular Masonic lodge gave, in express terms, such judicial power to these officers. It is competent for the Baptist Church alone, through its

proper officers (who do not derive their commissions from the State), and according to its established modes of procedure, to determine who is a Baptist; and it is, in like manner, competent for the Odd Fellows to determine who is an Odd Fellow; and these are questions into which the courts of this country have always refused to enter: holding that when men once associate themselves with others as organized bands, professing certain religious views, or holding themselves out as having certain ethical and social objects, and subject thus to a common discipline, they have voluntarily submitted themselves to the disciplinary power of the body of which they are members, and it is for that society to know its own. To deny to it the power of discerning who constitute its members, is to deny the existence of such a society, or that there is any meaning in the name which the Legislature recognizes when it grants the charter.

The judgment of the Circuit Court is affirmed. Judge HAYDEN concurs; Judge LEWIS is absent.