OCTOBER TERM, 1890. 485

The State ex rel. Young v. Temperance Ben. Soc.

THE STATE OF MISSOURI *ex rel.* JOHN H. YOUNG, Relator, v. TEMPERANCE BENEVOLENT ASSOCIATION, Respondent.

### St. Louis Court of Appeals, December 9, 1890.

1. **Mutual Benefit Societies:** CONTRACT OF MEMBERSHIP. An application for membership in a benefit society, in which the applicant makes agreements regarding his course of conduct while a member, is to be· construed as a part of the certificate of membership, when the certificate recites that the applicant is constituted a member "in consideration of the representations made in the application;" and of the payment of certain dues and assessments ; and *held* further that such agreements in the application were within the purview of the word "representations," as thus used in the certificate.

2. ———— : POWER OF COLLECTOR OF DUES TO WAIVE FORFEITURES. In the absence of an authority on the part of a mere collector of dues for a benefit society to waive conditions of membership, the collection of dues by him from a member guilty of a breach of those conditions, though he knew of this breach at the time, will not constitute a waiver of the right of the society to expel such member for the offense.

3. ———— : EXPULSION OF MEMBER WITHOUT NOTICE : MANDAMUS. An order made by a benefit society for the expulsion of a member will be invalid, if made without giving him notice and a full opportunity to be heard in defense of the charge against him ; still a proceeding of *mandamus*, instituted by him against the society for the purpose of his reinstatement, will not lie, if he himself admits his guilt of the charge, and the offense admitted warrants his expulsion.

*Original Proceeding of Mandamus.*

WRIT DENIED.

*C. D. Yancey*, for relator.

*J. B. Allen* and *J. H. Raney*, for respondent.

THOMPSON, J.—This is an original proceeding by *mandamus* to compel the respondent, which is an incorporated insurance association doing business on what is called the "assessment plan," to restore the relator to his rights therein. It appears that on the twenty-fifth day of May, 1887, the relator applied for a policy of insurance in the respondent society, and that his written and printed application contained the following agreement above his signature : " I agree that, while a member of the association, I will not use, sell nor petition for the sale of any intoxicant, and will endeavor to promote the social and moral advancement of fellow members, encourage them in the performance of the duties of good citizenship, and conform to the principles and regulations of the association." The policy, or benefit certificate, which bears date the twenty-eighth of May, 1887, recites "that the Temperance Benevolent Association, in consideration of the representations made in the application for benefit, and the payment of five dollars membership fee, an annual due of fifty cents, and the further payment to be made of all future assessments as per *pro rata* table on the death or disability of a member, do hereby constitute John H. Young," etc., "a beneficiary member" of the society. The benefit certificate further recites : "This certificate is accepted with the following conditions and agreements, which are made a part hereof.  *  *  * All holders of certificates, who shall become addicted to the habitual or unnecessary use of intoxicants, or sign a petition for the sale of the same, shall forfeit their membership."

The relator, paid his dues regularly and promptly until September of the present year, when the society refused to receive them any further, giving as a reason that he was engaged, contrary to his contract and the principles of the society, in keeping a saloon for the sale of intoxicating liquors. The relator in his reply to

the return, admits that he was so engaged, but denies that the policy prohibits him from being so engaged. He further admits "that, about the middle of December, 1888, with the full knowledge of respondent and of its officers, agents, local aid board, members and servants, he did engage in the sale of intoxicating liquors, and has since that time been, and is now, engaged in the sale of the same under the laws of the state of Missouri; that, since the time aforesaid, the respondent, with the full knowledge of the fact that the relator was engaged in the sale of intoxicants, has demanded, accepted and received from the relator two annual premiums or dues under said contract of insurance, and keeps and retains the same, and has also demanded, collected and received from the relator within the period aforesaid a large number of monthly assessments, to-wit, twenty or more, all of which the respondent still has in its possession and still retains." It appears from the evidence, and without dispute, that, during the year 1889, the relator held a United States revenue license for the sale of intoxicating liquors, and was keeping what, in the country, is called a "temperance saloon," by which is meant a saloon where non-intoxicating liquors only are ostensibly sold; that, in May of the present year, he took out a regular license from the county court of Wayne county for the sale of intoxicating liquors ; and that he has, since that time, been doing a regular and open saloon business under that license.

On this established state of facts the position of the relator, if we rightly understand it, is that the obligations of his contract are to be sought for in the policy alone; that the policy nowhere prohibits him from engaging in the business of keeping a saloon for the sale of intoxicating liquors. although it does prohibit him from petitioning for the establishment of such a saloon; and, finally, that although, when he petitioned to the county court for his present license, he violated

the terms of the policy, yet that it is a past act which the respondent has condoned and waived by subsequently accepting from him payments of dues with full knowledge of the fact.

I. We shall first inquire whether the contract subsisting between the parties prohibits the relator from engaging in the business of keeping a saloon for the sale of intoxicating liquors. It is perceived that the benefit certificate refers to the application and connects the application with it by the recital that the association, "in consideration of the representations made in the application," etc., issues the benefit certificate and undertakes as therein recited. This language connects the two papers together, so that they are, upon well-settled principles, to be construed as one contract. The word "representations" in the policy is large enough to include the promise which is conveyed in the application, that the applicant will not "use, sell nor petition for the sale of any intoxicants as a beverage." When, therefore, the relator admits that he was so engaged at the time when the respondent canceled his benefit certificate, he admits a state of facts which, in our judgment, shows that he is not entitled to a *mandamus* to restore him to his rights in the society.

II. But, if we are wrong in this conclusion, there is a lower ground, upon which it is equally clear that the relator is not entitled to this relief. The benefit certificate, by its terms, prohibits the holder from petitioning for the sale of intoxicants. The relator admits that, in May of the present year, he procured from the county court of Wayne county a license as a dramshop-keeper, and that he has ever since been keeping a saloon under that license. By the provisions of section 4572 of the Revised Statutes of 1889, a person desiring a license as a dramshop-keeper must present to the county court an application in writing for such license ; and in that section the application is designated as a "petition." When, therefore, the relator applied

to the county court for the license as a dramshop-keeper under which he is now doing business, he must have petitioned for the sale of intoxicants within the meaning of this policy. This, we understand his counsel to concede; but the argument is that this offense against the terms of the policy has been waived and condoned by the respondent, by accepting premiums thereafter with the knowledge of the fact, that he was engaged in the business of keeping a saloon. That he was openly and notoriously so engaged from May, when his state license was taken out, until September, when the respondent refused further to receive premiums from him, sufficiently appears. It also sufficiently appears that Mr. Roberts, who was the local secretary of the respondent, and collected dues for the respondent in that part of the state, knew, prior to the time when this state license was taken out, that the relator was engaged in the sale of intoxicants. But it does not appear what the powers of Mr. Roberts were, or that he had any authority beyond that of a mere collector of dues. There is no evidence showing, or tending to show, that he had authority to waive any condition in a benefit certificate or policy; and we hold that, whatever may have been his knowledge, it did not amount to a waiver or condonation on the part of the society. On the contrary, it appears that the trustees of the society ordered the cancellation of the policy, as soon as they had received satisfactory evidence that the relator was engaged in the business of keeping a saloon, and received neither annual nor monthly dues thereafter. We must, therefore, hold that this theory of a waiver of a past and completed offense against the policy, namely, the offense of petitioning in May of the present year for a license for the sale of intoxicating liquors is not established by the evidence.

III. There is a remaining question which deserves consideration. It is admitted that the relator was suspended from membership by an *ex parte* order of the

board of trustees of the society made without giving him notice, without preferring any formal charge against him, and without giving him any opportunity to answer any such charge and acquit himself if he could. There was, indeed, an attempt to get together a branch of the society at Piedmont, called the Local Aid Board, for the purpose of trying him ; but, though he was twice cited to appear before this body, the effort failed for want of a quorum each time. It is a well-settled principle, in respect of mutual benefit societies, that they cannot expel a member, or deprive him of his rights in the society, without giving him notice and a full opportunity to be heard in defense of the charges against him ; and, further, that, in proceedings for his expulsion, they must exercise their powers fairly and in good faith. *Mulroy v. Knights of Honor*, 28 Mo. App. 463 ; *Albers v. Merchants' Exchange*, 39 Mo. App. 583.

In these two cases these principles were fully inquired into, and numerous cases cited which support the conclusion here stated. But these principles have no room for application in any judicial proceeding to reinstate the expelled member, where he himself admits that he was guilty of the offense which warranted his expulsion. The writ of *mandamus* is not a writ of right. At common law it was an extraordinary prerogative writ. It is never issued on merely technical grounds. It is only issued where the issuing of it will do substantial justice, vindicate substantial right and prevent substantial wrong. If we were to issue it in this case, we should adjudge that the respondent has done wrong in expelling the relator for a violation of the contract which he himself admits. We should command the society to reinstate him, for the mere purpose of trying him for an offense, the guilt of which he admits. The writ of *mandamus* cannot, in our judgment, be used for such a vain and nugatory purpose.

The judgment will, therefore, be entered for the respondent. It is so ordered. All the judges concur.