STATE OF MISSOURI ex rel. W. H. MAYFIELD, Relator, v. ST. LOUIS MEDICAL SOCIETY, Respondent.

**St. Louis Court of Appeals, December 3, 1901.**

1. **Mandamus:** EXPULSION OF MEMBER FROM MEDICAL SOCIETY: CONSTITUTION AND BY-LAWS OF MEDICAL SOCIETY: PROCEEDING TO EXPEL MEMBER OF MEDICAL SOCIETY. Proceedings to try a member of a medical society for a violation of the by-laws of the society, are not required to be as formal or technical as a trial at law. It is sufficient if the constitution and by-laws are substantially observed, notice given to the accused and a judgment pronounced from proper motives and in good faith.

2. ———: ———: ———: ———. In the case at bar, the proceedings appear to have been conducted in perfect conformity to the society's constitution and rules, and the peremptory writ of mandamus to reinstate the expelled member is denied.

3. **Medical Society:** POWER TO EXPEL MEMBER MAY BE VESTED IN A COMMITTEE. It is lawful to vest the power of expulsion of a member from a society for violation of its rules, in a board of directors or in a committee.

4. ———: MAY ADOPT REASONABLE RULES FOR ITS GOVERNMENT. Societies organized for other than gainful purposes, and where the members enjoy no property rights, may adopt what rules they please for the government of the society and for the expulsion of members for violating their rules, provided the rules are reasonable.

## Original Proceeding.

PEREMPTORY WRIT OF MANDAMUS DENIED.

*R. F. Walker* for relator.

(1) There was no authority, express or implied, in the constitution or by-laws of the St. Louis Medical Society (the respondent) to suspend or expel relator without a trial. See art. 1, sec. 14, p. 7; art. 11, secs. 1-3, p. 12, and art. 22, sec. 1, p. 15, Constitution and by-laws of St. Louis Medical Society. State ex rel. v. Adams, 44 Mo. 570, and cases cited on p. 586; Albers v. Mer. Ex., 39 Mo. App. 583. (2) The authority to suspend or expel, given by the by-laws of the society (sec. 14, art. 1, and sec. 1, art. 22), is a delegated power from the State, whose creature the society is, and this power must be exercised directly by the society itself, as was the evident purpose of the by-laws, and not delegated to a subordinate agency such as the committee on ethics, as was attempted in the case at bar. It is not within the power of corporations to create judicial tribunals. 1 Bacon, Benefit Soc., sec. 100; Comm. v. German Soc., 15 Pa. St. 251; State ex rel. v. Chamber Com., 20 Wis. 63; Med. Soc. v. Weatherly, 75 Ala. 248; Austin v. Searing, 12 N. Y. 112. (3) The determination of relator's right to membership in the society was judicial in its nature and character, and proceedings to suspend or expel should have been so conducted after notice to relator, as to afford him an opportunity to be heard in his defense. High, Extra Legal Rem., sec. 294; Sibley v. Cartaret Club, 11 Vroom 295; Zeliff v. Knights of Pythias, 24 Vroom 536; State ex rel. v. Passaic Hosp. Assn., 59 N. J. Law 142; Bartlett v. Med. Society, 32 N. Y. 187. (4) A reasonable time should have been given relator to answer the charges and produce testimony, and he was entitled to be represented by counsel, to cross-examine witnesses, and to except to the proofs against him. Comm. v. German Society, 15 Pa. St. 251; State ex rel. v. Chamber Commerce, 20 Wis. 63; State ex rel. v. Liverpool, 2 Burr, 734; Murdock v. Phil. Acad., 12 Pick. 244; Rex v. Chalke, 1 Ld. Ray. 226. (5) In Murdock v. Phillips Academy, 12 Pick. 244, the court holds the following essential to render proceedings valid against a member of

a society of the character of respondent: (a) A citation or notice to appear must have been served on relator. (b) Charges must be given him to answer. (c) A reasonable time must be given for answer, and the introduction of evidence in his defense. (d) He must be allowed the liberty of counsel to defend his cause and except to proofs and witnesses. (e) Sentence must be pronounced after a hearing and finding of guilty. The following cases are to the same effect: Bartlett v. Med. Soc., 32 N. Y. 187; Erd v. Bavarian Assn., 67 Mich. 233. (6) Relator had a property right in the society which clearly entitled him to a hearing. Each individual member of such an organization as this is the owner of the corporate franchise, and his privilege of membership is subject to the protection of the courts although it may have no market value. 2 Black, Com., 37; Moses on Mand., 184; Dartmouth College Case, 4 Wheat. 518; Med. Soc. v. Weatherby, 75 Ala. 253; Slater v. Sup. Lodge, 76 Mo. App. 387; Mulroy v. Knights of Honor, 28 Mo. App. 471; Ludowiski v. Benev. Society, 29 Mo. App. 337.

*Nagel & Kirby* for respondent.

(1) Relator had no property rights in respondent, and from a legal standpoint respondent should be regarded as a voluntary association. State ex rel. v. Jefferson Club, — Mo. App. —; Manning v. San Antonio Club, 63 Tex. 166; People v. Board of Trade, 80 Ill. 134. (2) Persons who associate themselves with a society having certain social and ethical objects, and subject thus to a common discipline, have voluntarily submitted themselves to the disciplinary power of the society and it is for that society to know its own. State ex rel. v. Odd Fellows, 8 Mo. App. 148; People v. Board of Trade, 80 Ill. 134. (3) Relator having been expelled in accordance with the rules and regulations to which he had assented, the action of respondent will not be reviewed by the

courts. Levy v. Magnolia Lodge, 110 Cal. 297; State ex rel. v. Odd Fellows, 8 Mo. App. 148. Relator was offered a fair trial upon due notice, with opportunity to produce witnesses before the committee charged by the by-laws with such duty, and by his refusal to appear before such committee, relator waived all his rights, if any, to such trial. Lewis v. Wilson, 121 N. Y. 284. (4) Relator was not denied counsel before the committee on ethics. The society had the right to exclude counsel, not a member, from its meeting. Loubát v. LeRoy, 15 Abbott's N. C. 35. (5) Relator's admission of the truth of the charges made a trial unnecessary in any event. State ex rel. v. Temperance Assn., 42 Mo. App. 485.

GOODE, J.—This is an original proceeding, the object of which is to compel the respondent by a peremptory writ of mandamus, to restore the relator to his membership in the respondent society, from which he was heretofore expelled for securing and publishing letters commending his professional work, certificates of his skill and success, boasting of his cures in circulars and pamphlets distributed to the public or published in the newspapers, and offering to divide professional fees with surgeons and doctors who should seek his assistance in their cases. It is claimed these acts, of which the relator is accused, were in violation of certain clauses of the constitution and by-laws of the respondent society and of the medical code of ethics adopted by said society as part of its by-laws, tended to degrade the medical profession and destroy its usefulness and destroy also the objects, purposes and interests of the St. Louis Medical Society.

Much evidence is before us in the form of depositions and exhibits, showing the proceedings leading to relator's expulsion and tending to prove the charges against him; but as the reasons urged in favor of his restoration to membership by a peremptory order of this court, relate rather to the legality of the steps by which he was expelled, than to the sufficiency

of the charges or of the evidence adduced to support them, we need not fully set out either.   This does not mean relator formally admits in his reply the truth of all the charges, nor that they constitute good ground of expulsion, if true; but only that he directs his attack against the proceedings by which he was deprived of his membership.   These began with the adoption of a resolution by which a committee of three was appointed to investigate and report to the committee on ethics, certain matters which had been brought up against the St. Louis Medical Society in the Missouri State Medical Association.   It should be stated, that at a meeting of the latter body, a protest was lodged against relator's being permitted to register as a delegate from the St. Louis Medical Society. This protest was referred by the State association to a committee, which reported that relator had been guilty of non-professional and non-ethical conduct and should not be allowed to register.   It likewise reported that if the St. Louis Medical Society was unable to discipline its members, no delegate from that society should thereafter be admitted to the State Medical Association until such inability no longer existed.   This action of the State Association seems to have precipitated the fight on the relator in the St. Louis Medical Society; although it is claimed by him the attack was set on foot, or inspired, by enemies of his in St. Louis who were on the staff of physicians of the Missouri Baptist Sanitarium, a business rival of the Mayfield Sanitarium, of which relator is the president and principal owner.

The committee appointed by the St. Louis Medical Society to investigate the matters referred to in said report of the State association's committee on ethics, thereafter made a report, charging relator in four specifications with the misconduct aforesaid.

A by-law of the respondent society provides that its committee on ethics (which committee is authorized by the constitution of the society) shall consist of three associate mem-

bers, whose duty it is to investigate and report on all matters referred to it pertaining to medical ethics; also, that when charges are preferred against any member, they shall be submitted in writing and referred to the committee on ethics without being read. The proof shows that course was pursued in the relator's case. The investigating committee made charges, which were submitted to the whole society and by virtue of said by-law, referred by the president to the committee on ethics. The latter committee then gave relator notice in writing that it would meet at a certain time and place to investigate the charges against him. It also sent him a copy of said charges and notified him that exhibits had been filed in support of the same which he might inspect at any time.

Relator appeared before the committee on ethics at the designated time, but declined to go into an investigation of the charges before said committee, and served notice that he would demand a hearing before the society in open session. He says, and is corroborated by one witness, that he told the committee the majority of its members were prejudiced against him and were on the medical staff of his business rival, the Missouri Baptist Sanitarium. He claimed, too, insufficient time was given for him to get his evidence; but we think the proof shows the committee notified him he could have all the time he needed for that purpose. In effect, he challenged the committee's right to investigate the charges, and claimed he was entitled to a trial before the full society.

The committee on ethics proceeded to take testimony and make its report, in which it stated it found relator was guilty as charged of all the specifications against him, except the one for delivering a pretended address. It filed with its report the original charges, the notice to relator of the time and place of hearing, his demand for a hearing before the society and all the documentary evidence taken at the investigation. Relator was notified when the report would be submitted to the

society. He was present on that occasion and demanded a trial. This was refused. The report was read, together with the evidence in support thereof, was adopted, and relator expelled from membership by the votes of more than three-fourths of the members present.

Appellant's position that he was deprived of his membership without a hearing is not well taken. Neither is his other position, that he was tried by the committee on ethics, in contravention of his legal right, because the power to try him was lodged in the whole body of the society and could not be delegated to and exercised by a subordinate committee. In no sense can it be said relator was tried by the committee on ethics, or expelled by it. A by-law provided, as stated, that charges like those made against relator should be referred to said committee without being read, investigated by them and a report made. This was probably to save a member from the humiliation of having disgraceful accusations against him made public if it turned out they were unfounded. Relator had been a member of the respondent society for many years and must be held to have assented to that mode of procedure. State ex rel. v. Odd Fellows' Grand Lodge, 8 Mo. App. 148. We think it was just and lawful. The committee gave him a fair opportunity to be heard, submit his testimony, present his evidence and make his defense. An investigation in that manner is permissible; and if the relator had availed himself of the opportunity afforded, the testimony adduced by him in disproof or extenuation of the offenses charged, would have been submitted to the society with the committee's report and considered, as the other evidence was. His expulsion was by the action of the society and not of the committee, after it had heard the latter's report and the evidence—as much the society's action as is a judgment pronounced on the report of a referee of the evidence and his findings in a controversy referred to him, the judgment of the court and not of the referee. Proceedings to try a member in organizations of

this kind are not required to be as formal or technical as a trial at law. It is sufficient if the constitution and by-laws are substantially observed, notice given to the accused and a judgment pronounced from proper motives and in good faith. Commonwealth v. Union League Club, 135 Pa. St. 301; Albers v. Merchant's Exchange, 39 Mo. App. 583; Molroy v. Knights of Honor, 28 Mo. App. 463; Farmer v. Board of Trade, 78 Mo. App. 557. But in this case the proceedings appear to have been conducted in perfect conformity to the society's constitution and rules. It has been held lawful in many cases to vest the power of expulsion in a board of directors, or in a committee; and assuredly it is proper to take the testimony bearing on the charges through the agency of a committee, to be afterwards submitted to, considered by and acted on by the members of the corporation at a full meeting. Loubet v. Le Roy, 40 Hun. (N. Y.) 546, 15 Abb. N. Cas. 1; Dawkins v. Antrobus, L. R. 17 Ch. Div. 615; Lambert v. Addison, 46 T. L. R. 20.

The testimony establishes, we think, that the committee were disposed to deal fairly with the relator. While they treated patients at the Baptist Sanitarium, they were not otherwise interested in that institution than they were in various hospitals and sanitariums where they practiced. There is nothing to show they cherished animosity towards the relator or were desirous of injuring his institution to help the other. We find, in short, that the proceedings of the committee and of the society were not malevolent or biased, but were animated by a spirit of fairness and justice.

The acts of which relator was accused appear to have been in violation of the code of ethics of the medical profession and are testified by all the witnesses, except the relator himself, to degrade the profession and introduce incorrect relations between physician and patient. They were clearly shown to have been detrimental to the standing and interest of the respondent. Still, they might strike many lay minds as far

from flagrant derelictions. We consider it only fair to say, that while laudatory advertisements of the Mayfield Sanitarium in pamphlets, circulars and newspapers are proven to have been published and distributed by the relator, as well as testimonials praising his own professional skill, kindness and piety, from patients who had been under his care, those publications are in a very different tone from the usual advertisements of self-styled specialists, or charlatans who pretend to marvelous skill in treating some diseases, or the use of peculiarly efficacious remedies unknown to physicians generally. The advertising charged against the relator was intended to procure patronage for the sanitarium which he was starting under adverse conditions, and however contrary to medical ethics or distasteful to medical men, as productive of mischief by imposing on the public, such a method may be, it seems not to be an unmixed evil when it calls attention to an institution where sick people can find comfortable quarters and skilled attendants; things sometimes unobtainable at a moment's notice when needed most. The proof is that relator's sanitarium was semi-charitable like many hospitals—patients unable to pay were often received and treated free.

But such behavior, whether laudable or the reverse, is condemned by the rules of the respondent society and the ethical code which constituted a part of its by-laws. Relator was bound by those regulations, as he had sought and long retained his membership while they were in force. Such bodies may adopt what rules they please and they will bind the members—at least, if in the bounds of reason. This is especially true of societies organized for other than gainful purposes and where the members enjoy no property rights, as in the case of the respondent society. State v. Odd Fellows' Grand Lodge, 8 Mo. App., supra. To adduce certificates of skill and success, or to perform any other similar acts, is expressly denounced by the code as the ordinary practice of empirics and highly reprehensible in a regular physician. So, the proof

showed, was sending out letters to country practitioners offering to divide fees with them if they would seek the professional assistance of relator.    That act was confessed; as was likewise the distribution of pamphlets containing testimonials to his skill; the one is defended as no violation of the respondent's rules or the ethical code; the other excused on the ground that the exigencies of competition rendered it necessary.    Each act was considered by the society as an infraction of its by-laws and the second unquestionably was.    The writ of mandamus is a discretionary writ and ought not to be issued in view of such circumstances, where the truth of an accusation sufficient to warrant expulsion is virtually admitted, even though relator had been expelled without notice and a fair chance to be heard. State ex rel. v. Young, 42 Mo. App. 485.

We find nothing in the record which would authorize us to set aside the corporate action of the society on the charges preferred against the relator.    A peremptory writ is, therefore denied.    *Bland, P. J.,* and *Barclay, J.,* concur.